UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

MARK LUCTERHAND,

        Plaintiff,

      v.                        Case No. 05-CV-1047

GRANITE MICROSYSTEMS, INC.,
DANIEL ARMBRUST,

        Defendants,

  and

FEDERAL INSURANCE COMPANY,
VIGILANT INSURANCE COMPANY,

        Intervening Defendants.

_____

**ORDER**

On October 3, 2005, plaintiff Mark Lucterhand ("Lucterhand") filed his complaint in this action alleging that the defendants, Granite Microsystems, Inc., ("Granite Microsystems"), and Daniel Armbrust ("Armbrust"), intentionally terminated Lucterhand for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., intentionally inflicted emotional distress on Lucterhand, and intentionally withheld medical treatment and falsely imprisoned Lucterhand.  Lucterhand filed a motion for partial summary judgment on July 12, 2006, requesting that the court grant him judgment on his FMLA claim.  On August 10, 2006, the defendants filed a cross-motion for summary judgment on all

three causes of action asserted by Lucterhand.  Because some of the material facts regarding Lucterhand's FMLA claim are in dispute, the court is obliged to deny Lucterhand's motion for partial summary judgment and the defendants' motion for summary judgment on Lucterhand's FMLA claim.  However, for reasons stated below, the court will grant judgment in favor of the defendants' on Lucterhand's other claims.

On March 29, 2006, Federal Insurance Company ("Federal") and Vigilant Insurance Company ("Vigilant") filed a motion to intervene as defendants in this action pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(2).  In an order dated June 12, 2006, the court granted the intervening defendants' motion to intervene.  Federal and Vigilant filed a motion for a declaratory judgment pursuant to Fed. R. Civ. P. 57 on July 11, 2006, requesting that the court issue an order declaring that they have no duty to defend or indemnify the defendants for the allegations contained in Lucterhand's complaint.  On August 17, 2006, the defendants filed a cross-motion for a declaratory judgment pursuant to Fed. R. Civ. P. 57, requesting that the court issue an order declaring that Federal and Vigilant are barred from challenging coverage, have a duty to defend the defendants in this case, and have a duty to reimburse the defendants for all defense costs incurred by them to date.  Because the court concludes that Federal and Vigilant have no duty to defend, the court will grant Federal and Vigilant's motion for a declaratory judgment and deny the defendants' motion for a declaratory judgment.

The court will first address the cross-motions for summary judgment regarding the merits of Lucterhand's claims, and then address the cross-motions for a declaratory judgment regarding Federal and Vigilant's duty to defend.

## BACKGROUND

Granite Microsystems, located in Mequon, Wisconsin, manufactures custom integrated computers and computer related products. Armbrust is the president, chief executive officer, and majority shareholder of Granite Microsystems. Lucterhand began working for Granite Microsystems on July 8, 2002, as the company's purchasing manager and he became the director of materials approximately one year later. The parties dispute whether the change in Lucterhand's job title from purchasing manager to director of materials was a promotion. Lucterhand states that he was promoted. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 19; Lucterhand Dep. 65; Armbrust Dep. 47.) The defendants state that the change was not a promotion; rather, Lucterhand was simply granted a "cost of living" increase, the change in title was at Lucterhand's request to enhance his credibility with his coworkers, and his job duties remained the same. (Armbrust August 9, 2006 Aff. at ¶ 13.)

In June 2004, Granite Microsystems promoted Lucterhand from director of materials to director of global operations, where he reported to Armbrust. The defendants state that they reluctantly agreed to give Lucterhand the director position, but only on an interim basis. (Armbrust August 9, 2006 Aff. ¶ 6.) Lucterhand states

-3-

that Granite Microsystems did not inform him that he would be an interim director of global operations, but that he understood the interim nature of his position to be in relation to the fact that if he performed well, Granite Microsystems would promote him into a vice president position the following year. (PPFOF ¶ 34; Lucterhand Dep. 66, 231.)

In the early or middle 1990's, Lucterhand injured his knee while lifting weights. While getting out of his car in September 2004, Lucterhand injured his left knee. On September 24, 2004, Lucterhand sought medical attention from his general practitioner for his knee injury, and he had an MRI performed on his knee on September 29, 2004. Following this incident, Lucterhand did not use a brace, crutches, or a wheelchair, but he experienced difficulty going up and down stairs.

On October 3, 2004, Lucterhand, Armbrust, Daniel Bader ("Bader"), a member of Granite Microsystems board of directors, and Shan Thai Choong ("Choong"), a job candidate for a position with Granite Microsystems' operations in China, ate lunch together at a restaurant in downtown Milwaukee, Wisconsin. Choong traveled from China to be interviewed by Granite Microsystems and to give a presentation about the supply chain in China and the Chinese market in general. After lunch, the group left the restaurant to go to Bader's office where Choong was to give the presentation. As Lucterhand descended a flight of stairs outside the restaurant, his left knee gave out. Lucterhand fell slightly and caught himself on a handrail. Lucterhand states that after this occurred, on a pain scale of 1 to 10, his pain was

-4-

a 9. (Lucterhand Dep. 114.) Armbrust went to get his car and drove the car up to the front of the restaurant where Lucterhand was waiting. (Lucterhand Dep. 114, 116; Armbrust Dep. 96.) Choong and Bader rode together in Bader's car to Bader's office.

The parties dispute what happened next. Lucterhand states that on the way to Bader's office, he asked Armbrust to allow him to miss Choong's presentation. (Lucterhand Dep. 119, 121.) Lucterhand states that he did not believe he would be able to sit through what may have been a two-hour presentation given the amount of pain he was in. (*Id.*) Lucterhand states that Armbrust told Lucterhand he was free to leave after the presentation was over. (Lucterhand Dep. 119.) Lucterhand states that he reiterated to Armbrust that he was in a lot of pain; however, Armbrust did not respond. (*Id.*) Lucterhand states that he believed that if he did not attend Choong's presentation, Armbrust would be greatly displeased. (Lucterhand Dep. 120.) The defendants, however, deny that Lucterhand ever asked Armbrust to be excused from the presentation or to take him to a hospital or other medical facility prior to the conclusion of Choong's presentation. (Armbrust August 9, 2006 Aff. ¶ 9; Armbrust Dep. 98-99.)

Armbrust dropped Lucterhand off at the front of Bader's office building and Lucterhand walked unassisted to the conference room. Choong's presentation lasted approximately one hour and during the presentation Lucterhand sat on a chair with his left leg straightened in front of him and actively participated in the

Case 2:05-cv-01047-JPS    Filed 03/02/07    Page 5 of 55    Document 78

presentation by asking several questions of Choong.  (*Id.*)  The defendants state that Lucterhand never said or did anything that indicated or suggested he was in pain. (*Id.*)  Lucterhand states that as he sat through the presentation, his left pant leg became tight around his left leg as it swelled.  (Lucterhand Dep. 124.)  After Choong's presentation, Lucterhand states that he was unable to stand on his own and used a nearby table as a crutch because he could not place weight on his left leg.  (Lucterhand Dep. 126.)  After several minutes, Lucterhand braced himself against the walls of the room to enable himself to walk out of the room unassisted. Lucterhand walked unassisted to Armbrust's vehicle and Armbrust offered to drive him to a hospital.  Armbrust drove Lucterhand, at his request, to St. Mary's Hospital Ozaukee, in Mequon, Wisconsin, because it was close to Lucterhand's home and was the same hospital where Lucterhand had his September 29, 2004 MRI. Armbrust drove Lucterhand to the emergency unit of the hospital and retrieved a wheelchair for Lucterhand to travel from Armbrust's vehicle to the hospital entrance.

Lucterhand was admitted to the hospital and diagnosed with a completely ruptured left quadriceps.  Lucterhand had surgery on his left leg to repair the damage to his quadriceps.  Lucterhand was discharged five days later, on October 8, 2004.  When Lucterhand was in the hospital, Armbrust called him twice. Lucterhand states that in the first telephone conversation, Armbrust told him that Granite Microsystems was very busy, and made it clear to Lucterhand that he wanted him to return to work as quickly as possible.  (Lucterhand Dep. 185.)

Lucterhand also states that Armbrust insisted that Lucterhand provide him with a date when he would be able to return to work, but Lucterhand told Armbrust that he did not know exactly when he would be discharged and that he would not be released from the hospital until he was able to use a set of crutches and be mobile. (*Id.*) The defendants state that Armbrust called to tell Lucterhand not to worry about anything and that the first concern was for him to get better. (Armbrust Dep. 120-22.) The defendants also state that Armbrust may have asked Lucterhand if there was a date that the hospital was expecting him to be able to leave the hospital and whether he would be released to work. (*Id.*)

In a second conversation, Armbrust and a Granite Microsystems production manager called to see if there were any issues that they needed to be aware of and Armbrust again asked Lucterhand when he was going to get out of the hospital and be able to return to work. Lucterhand told Armbrust he would return to work as quickly as possible, but that he would have physical therapy appointments, follow-up medical appointments, and he would be taking the Ozaukee County Shared Ride Program to and from work each day. Lucterhand states that Armbrust's insistence that he return to work as quickly as possible caused Lucterhand to push the medical staff at the hospital to hasten his discharge. (Lucterhand Dep. 199; PPFOF ¶ 103.) Lucterhand received his normal compensation from Granite Microsystems while he was off of work for his hospitalization; he used three sick days and two vacation days for his time off. (Armbrust August 9, 2006 Aff. ¶ 10, Ex. E.)

Lucterhand returned to work on Monday, October 11, 2004. Lucterhand used crutches and wore a brace on his left leg. Lucterhand states that his physician released him to return to work on the understanding that Lucterhand's walking would be minimal and that his job could be performed mainly from behind a desk. (Lucterhand Dep. 144.) The defendants state that Lucterhand's physician released him to work without limitations or restrictions. (Armbrust August 9, 2006 Aff. ¶ 10, Ex. F.) Following his return to work, Lucterhand had to attend two physical therapy appointments each week for several weeks, and also had follow-up visits with his surgeon. Because Lucterhand was unable to drive, he used the Ozaukee County Shared Ride Program to get to and from work. Lucterhand sought the earliest pick-up time and arrived at work as early as 7:00 a.m. or as late as 9:00 a.m. and he left work as late as 5:00 p.m. or 5:30 p.m, the latest pick-up time the program offered.

In October 2004, Lucterhand received an estimate that Granite Microsystems' profit for the month would be $4 million. On October 21, 2004, Armbrust sent Lucterhand an email questioning why the profits for the month were going to fall short of the forecasted amount and expressing disappointment in Lucterhand's department's performance. (Lucterhand Dep. 250.) Lucterhand states that Armbrust told him that he was disappointed that Lucterhand was not in the factory performing manual labor while he was still on crutches, and that Lucterhand should have been assembling computers. (Lucterhand Dep. 254.) Lucterhand states that

-8-

he was physically unable to comply with Armbrust's requests that he assemble computers. (*Id.*) According to Lucterhand, Armbrust told him that he was starting to believe that Lucterhand was milking out his injuries and that Lucterhand stayed in the hospital longer than he had to. (Lucterhand Dep. 255.) The defendants, however, deny that Armbrust told Lucterhand that he missed too much work or that he was making too much of his injuries or milking them in some way. (Armbrust Dep. 150.)

On November 11, 2004, Armbrust went into Lucterhand's office and terminated his employment. Armbrust and Lucterhand disagree as to what was said during that conversation. According to Lucterhand, Armbrust explained that he was terminating Lucterhand because he did not believe that his injury was as extensive as Lucterhand represented, Lucterhand spent too much time away from work, and Lucterhand should have found a better way to and from work. (Lucterhand Dep. 258.) The defendants deny this and state that at this meeting Armbrust did not talk about Lucterhand's injuries or tell Lucterhand that he had missed too much work. (Armbrust Dep. 150.) According to the defendants, Lucterhand was terminated because of his poor performance. The defendants state that at this meeting Armbrust and Lucterhand discussed the performance of Lucterhand's department and Armbrust stated that Lucterhand's department was not getting any better and that the company was going to terminate his employment or accept his resignation. (Armbrust Dep. 143-44.) After his termination, Lucterhand was

-9-

unemployed from November 11, 2004, until February 14, 2005. (Lucterhand Dep. 57.)

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255. In considering cross-motions for summary judgment, the court is obliged to view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made. *Bassiouni v. FBI*, 436 F.3d 712, 721 (7th Cir. 2006).

In his complaint, Lucterhand asserts that the defendants intentionally

Case 2:05-cv-01047-JPS   Filed 03/02/07   Page 10 of 55   Document 78

terminated him for exercising his rights under the FMLA, 29 U.S.C. § 2601, et seq., intentionally inflicted emotional distress on him, and intentionally withheld medical treatment and falsely imprisoned him by refusing his request to miss Choong's presentation. Pursuant to 28 U.S.C. § 1367(a), the court has supplemental jurisdiction over Lucterhand's claims raised under Wisconsin law, intentional infliction of emotional distress and false imprisonment, because all his claims arise from the same case or controversy. *See id.* As noted above, the parties filed cross-motions for summary judgment. Lucterhand asserts that he is entitled to summary judgment on his FMLA claim. The defendants assert that they are entitled to summary judgment on Lucterhand's FMLA claim because Lucterhand did not take FMLA leave. The defendants also assert that Lucterhand's claims of false imprisonment and intentional infliction of emotional distress are frivolous. In his response to the defendants' motion for summary judgment, Lucterhand concedes that he cannot maintain an actionable claim for intentional infliction of emotional distress. (Pl.'s Resp. Br. 41.) Accordingly, Lucterhand's remaining claims are that the defendants violated the FMLA and falsely imprisoned him.

**A.    FMLA Claim**

The FMLA allows eligible employees of a covered employer to take 12 weeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful for an

employer to interfere with an employee's attempt to exercise any FMLA rights. 29 U.S.C. § 2615(a)(1). It also forbids an employer from retaliating against an employee who exercises FMLA rights. *See id.* § 2615(a)(2) (prohibiting discrimination against an individual who opposes practices made unlawful by the FMLA); *id.* § 2615(b) (prohibiting discrimination against persons who participate in or institute FMLA proceedings or inquiries). An employee is entitled to FMLA leave if (1) he or she is afflicted with a "serious health condition" and (2) that condition renders him or her unable to perform the functions of his or her job. *See* 29 U.S.C. § 2612(a)(1)(D). The defendants concede that Lucterhand was an eligible employee; that Granite Microsystems was a covered employer; and that Lucterhand had a "serious health condition" while he was hospitalized. (Defs.' Br. in Supp. of Mot. for Summ. J. 30.) Lucterhand asserts that the periods of intermittent leave to attend follow-up visits with his surgeon and physical therapy appointments, as well as the time that he was hospitalized, qualify as FMLA-protected absences. *See* 29 U.S.C. § 2612(b)(1) (leave under the FMLA "may be taken intermittently . . . when medically necessary.").

As a preliminary matter, the defendants assert that Lucterhand's FMLA claim fails as a matter of law because Lucterhand never exercised any rights under the FMLA. Specifically, the defendants assert that Lucterhand never took FMLA leave. The FMLA provides that "[a]n employer may require that a request for leave under subparagraph . . . (D) [because of a serious health condition] . . . be supported by

-12-

a certification issued by the health care provider of the eligible employee . . . as appropriate" and that "[t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). When Lucterhand began working at Granite Microsystems, he received a copy of Granite Microsystems' Associate Manual. (Armbrust August 9, 2006 Aff. ¶ 19, Exs. K and L.) The manual provides that the employee "is responsible for reading and understanding this Associate Manual." (*Id.*) The manual contains the Company's Family and Medical Leave Policy which provides, in part, as follows:

> Unpaid leave may be taken by an Associate in the event he/she experiences a "serious health condition." A serious health condition will generally occur when the Associate receives inpatient care at a hospital, hospice or nursing home or receives outpatient care which requires a continuing schedule of treatment by a health care provider.

> For leave, an Associate must provide the Company with a Certification of Health Care Provider form which is completed by the treating health care provider. Forms are available from Human Resources. . . . The Associate may also elect to substitute accrued paid leave for unpaid leave. . . .

> If you fail to meet the requirements of this Policy for family or medical leave your request for leave may be denied or delayed until the requirements are met.

*Id.* The defendants assert that because Lucterhand never provided it with a certification from a health care provider, he has not availed himself of any FMLA rights.

Lucterhand used three sick days and two vacation days for the time he was off of work for his hospitalization. (Armbrust August 9, 2006 Aff. ¶ 10, Ex. E.)

-13-

Lucterhand admitted in his deposition that he never advised Granite Microsystems that he wanted to take FMLA leave, and that he never provided Granite Microsystems with certification from a health care provider for the time he was on leave. (Lucterhand Dep. 268-69, 273-74.) The defendants assert that because Lucterhand never advised Granite Microsystems that he wanted to take FMLA leave, and he never provided Granite Microsystems with certification from a health care provider as required by the associate manual, the leave Lucterhand took was not FMLA leave. As such, the defendants assert, Lucterhand has not exercised any rights under the FMLA, and his claim of retaliation under the FMLA must fail as a matter of law.

Lucterhand contends that the defendants' undisputed knowledge of Lucterhand's injury provided Granite Microsystems with sufficient notice that Lucterhand's leave may qualify as FMLA leave. Lucterhand notes that the defendants were aware of his condition while he was at the hospital and aware of his requests for time off to attend physical therapy sessions. Thus, Lucterhand asserts, because Granite Microsystems was given notice that his absences may qualify as FMLA leave, Granite Microsystems had a duty to inquire further. According to Lucterhand, if Granite Microsystems required the certification from a health care provider before considering his leave to qualify as FMLA leave, then Granite Microsystems should have requested the certification from him.

In support of this position, Lucterhand cites to *Stoops v. One Call*

*Communications, Inc.*, 141 F.3d 309 (7th Cir. 1998), where the Seventh Circuit held that employees requesting unpaid leave "need not mention the FMLA. 29 C.F.R. § 825.303(b). In fact, the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed." *Id.* at 312. Lucterhand also cites to *Hendry v. GTE North, Inc.*, 896 F. Supp. 816 (N.D. Ind. 1995), where the district court determined that by reporting her illness to her employer, the plaintiff arguably put the employer on notice that FMLA-qualifying leave was needed, and the employer had a responsibility to inquire further about whether FMLA leave was being sought and to obtain the necessary details of the leave to be taken. *Id.* at 828. In light of the courts' holdings in these cases, that employees seeking FMLA leave need only provide their employers with enough information to put the employers on notice that FMLA-qualifying leave is needed, Lucterhand asserts that he did not waive his rights under the FMLA by failing to provide certification from his health care provider.

The defendants contend that Lucterhand's failure to provide certification from a health care provider in accordance with the associate manual is fatal to his FMLA claim. In support of this position, the defendants cite to several cases where the court determined that the plaintiffs failed to avail themselves of FMLA protection because they did not provide the certification forms requested by their employers. However, the circumstances in the cases cited by the defendants substantially differ

-15-

from those in this case. In each of the cases cited by the defendants, the employer requested certification from the employee at or around the time the leave was taken, and after the certification was specifically requested, the employee failed to provide the certification. *See, e.g., Myers v. Dolgencorp, Inc.*, 2006 U.S. Dist. LEXIS 14108, 2006 WL 408242 (D. Kan. 2006) (approximately one week after leave was taken, employer mailed plaintiff a letter containing the medical certification form for plaintiff's doctor to complete and advised plaintiff that she had twenty calendar days from the date of the letter to return the completed medical certification); *Neide v. Grand Court Lifestyles, Inc.*, 38 F. Supp. 2d 938 (D. Kan. 1999) (director told plaintiff that the employer needed a doctor's note indicating plaintiff was unable to work and when he could return to work); *Lockhart v. Home Interiors & Gifts, Inc.*, 2006 U.S. Dist. LEXIS 21895, 2006 WL 887387 (E.D. Tex. 2006) (employer mailed FMLA paperwork to plaintiff shortly after she requested medical leave, and plaintiff was told to return the completed paperwork to the employer); *Baldwin-Love v. Electronic Data Sys. Corp.*, 307 F. Supp. 2d 1222 (M.D. Ala. 2004) (when plaintiff requested an FMLA leave of absence, she received a packet in the mail containing a blank healthcare provider certification form and a letter stating she was required to submit the completed certification form within fifteen days); *Poteet v. Potter*, 2005 U.S. Dist. LEXIS 8658, 2005 WL 1115805 at *19 (S.D. Ind. 2005) (after requesting FMLA leave, plaintiff was sent a letter indicating that he had fifteen days from receipt of the letter within which to return to his supervisor properly completed FMLA

documentation).  Unlike Granite Microsystems, the employers in these cases did not simply rely upon language in their employee handbooks to provide notice to their employees that certification from a health care provider was required before their leave qualified as FMLA leave.  The employers specifically asked the employees to submit the certification at or around the time the leave was requested, as a condition of receiving FMLA leave.

The FMLA permits Granite Microsystems to require a request for leave to "be supported by a certification issued by the health care provider of the eligible employee . . . as appropriate."  29 U.S.C. § 2613(a).  However, an employer must give notice of a requirement for medical certification each time a certification is required.  *See* 29 C.F.R. § 825.305(a).  In addition, "[i]n most cases, the employer should request that an employee furnish certification from a health care provider at the time the employee gives notice of the need for leave or within two business days thereafter, or, in the case of unforeseen leave, within two business days after the leave commences."  29 C.F.R. § 825.305(c).

Here, Granite Microsystems did not request that Lucterhand furnish certification from a health care provider when he took leave.  Although the associate manual states that employees were required to provide certification from a health care provider to take leave (Armbrust August 9, 2006 Aff. Ex. K), Granite Microsystems granted Lucterhand the leave he requested without asking him to provide certification at the time he took the unforseen leave.  Indeed, Granite

-17-

Microsystems let Lucterhand use sick days and vacation days so that he would be compensated for the week he was in the hospital. In addition, it is undisputed that Lucterhand suffered from a serious health condition, and the defendants do not suggest that Lucterhand would have had difficulty obtaining certification from his healthcare provider substantiating the seriousness of his injury and justifying his need to take leave.

The defendants assert that the issue is not whether Lucterhand's leave qualified as FMLA leave; rather, the issue is whether Lucterhand wanted to exercise his rights under the FMLA, "and such exercise can only be done in one way -- by providing a Certification of Health Care Provider." (Defs.' Reply Br. 4.) However, Lucterhand was not required to even mention the FMLA to exercise his rights under the FMLA. Employees "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. §§ 825.302(c), 825.303(b); *see also Stoops*, 141 F.3d at 312. In addition, Lucterhand did not waive his rights under the FMLA by not mentioning the FMLA. *See* 29 C.F.R. § 825.220(d) ("Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA."). Indeed, the regulations state that you do not even have to be an employee to raise a retaliation claim under the FMLA. *See* 29 C.F.R. § 825.220(e) ("Individuals, and not merely employees, are protected from retaliation for opposing . . . any practice which is unlawful under the Act. They are similarly protected if they oppose any practice which they reasonably believe to

-18-

be a violation of the Act or regulations.").

If Granite Microsystems had denied Lucterhand's leave because he did not provide certification from a health care provider after Granite Microsystems specifically requested such certification, the defendants' argument that Lucterhand did not avail himself of FMLA protection would have merit. However, Granite Microsystems granted Lucterhand the leave he requested without asking Lucterhand to provide certification at the time he took the unforseen leave, and without conducting further investigation to determine whether Lucterhand was entitled to FMLA leave. Granite Microsystems did so, perhaps, because it was aware of Lucterhand's health condition and it understood that his condition would require that he miss work. As such, the court concludes that the defendants' claims that Lucterhand's leave was not FMLA leave and that Lucterhand never exercised any rights under the FMLA lacks merit. *See Burnett v. LFW Inc.*, 472 F.3d 471, 480 (7th Cir. 2006) ("Once an employee informs his employer of his probable need for medical leave, the FMLA imposes a duty on the employer to conduct further investigation and inquiry to determine whether the proposed leave in fact qualifies as FMLA leave."); *see also Aubuchon v. Knauf Fiberglass*, *GMBH*, 359 F.3d 950, 953 (7th Cir. 2004) ("[The employee] just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave. That is enough to trigger the employer's duty to request such additional information . . . as may be necessary to confirm the employee's

-19-

entitlement." (citing 29 C.F.R. §§ 825.302(c), 825.303(b), 825.305(d))).

In addition, viewing the facts in the light most favorable to Lucterhand, the court concludes that Lucterhand may be able to prove that he was unable to perform the functions of his job to qualify for FMLA leave. *See* 29 U.S.C. § 2612(a)(1)(D). Lucterhand had to spend a week in the hospital, attend physical therapy sessions, and he states that he was physically unable to comply with Armbrust's requests that he assemble computers. (Lucterhand Dep. 254.) Given that Granite Microsystems did not request additional information to confirm that Lucterhand was entitled to FMLA leave, the court concludes that Lucterhand did not waive any rights under the FMLA or fail to avail himself of the Act's protection by not providing Granite Microsystems certification from his health care provider.

The defendants assert that even if Lucterhand had provided Granite Microsystems certification from his health care provider, his FMLA claim lacks merit because, contrary to Lucterhand's claim that he was terminated in retaliation for exercising rights under the FMLA, the defendants terminated Lucterhand because of his poor performance. The FMLA prohibits an employer from discriminating or retaliating against an employee who requests FMLA leave. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); 29 U.S.C. § 2615. "A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent, while the latter

-20-

requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884-85 (7th Cir. 2005). Lucterhand sets forth an FMLA claim under the discrimination/retaliation theory by introducing evidence of discriminatory and retaliatory intent on the part of the defendants.

In his motion for partial summary judgment, Lucterhand asserts the defendants terminated him in retaliation for exercising his FMLA rights; specifically, because they did not want to accommodate his medical restrictions resulting from his surgery. As noted above, the FMLA prohibits retaliation against any individual who has opposed an act or practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). In making out a charge of retaliation under the FMLA, a plaintiff has two routes to establish a retaliation claim. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 n.3 (7th Cir. 2004) (courts assess a claim of FMLA retaliation in the same manner that courts evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII). One is to present direct evidence, or "evidence that establishes without resort to inferences from circumstantial evidence," that the plaintiff engaged in protected activity and as a result suffered the adverse employment action of which the plaintiff complains. *Stone*, 281 F.3d at 644. If the plaintiff's evidence is thereafter contradicted, the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse

employment action against the plaintiff even if it had no retaliatory motive; in that event the defendant is entitled to summary judgment because it has shown that the plaintiff was not harmed by retaliation. *Id.*

If a plaintiff proceeds under the direct method, he or she may rely on either direct evidence or circumstantial evidence. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence is what the employer said or did. "Direct evidence essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Intentional discrimination may also be established by a plaintiff who establishes a "convincing mosaic" of circumstantial evidence. *Troupe v. May Dept. Stores*, 20 F.3d 734, 737 (7th Cir. 1994). Three types of circumstantial evidence of intentional discrimination can be distinguished: suspicious statements or behavior, other employees receiving systematically better treatment (comparative), and a qualified plaintiff was passed over by someone else without plaintiff's characteristic and the employer's reason for the difference is unworthy of belief (pretextual). *Id.* at 736.

In the second route, the indirect method, the plaintiff must demonstrate that after the plaintiff engaged in a statutorily protected activity, the plaintiff was treated less favorably than other similarly situated employees who did not engage in the protected activity, even though the plaintiff was performing his or her job in a satisfactory manner. *Stone*, 281 F.3d at 644; *see also Buie*, 366 F.3d at 503. If the

Case 2:05-cv-01047-JPS   Filed 03/02/07   Page 22 of 55   Document 78

plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for the adverse employment action. *Id*. Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Because Lucterhand has not identified a similarly situated person treated more favorably than he, he must proceed under the direct method of proof. *See Burnett*, 472 F.3d at 482. Lucterhand asserts that he engaged in protected activity and as a result suffered an adverse employment action. Specifically, Lucterhand asserts that the defendants used his hospitalization, and his need for follow-up visits and physical therapy sessions as a reason to terminate him. In support of this position, Lucterhand presents direct evidence, however, the evidence is contracted. For example, Lucterhand states that Armbrust's insistence that he return to work as quickly as possible caused Lucterhand to push the medical staff at the hospital to hasten his discharge. (Lucterhand Dep. 199; PPFOF ¶ 103.) The defendants, however, state that Lucterhand's medical records contradict this claim, and they deny that they pressured Lucterhand to leave the hospital. (Armbrust Dep. 120-22; Laing Aff. Ex. B.)

Lucterhand also states that shortly after he returned from his hospitalization, Armbrust told him that he was disappointed that Lucterhand was not in the factory performing manual labor while he was still on crutches, and that Lucterhand should

Case 2:05-cv-01047-JPS   Filed 03/02/07   Page 23 of 55   Document 78

have been assembling computers.  (Lucterhand Dep. 254; Armbrust Dep. 151.)

Lucterhand states that he was physically unable to comply with Armbrust's requests

that he assemble computers.  (*Id.*)  According to Lucterhand, Armbrust told him that

he was starting to believe that Lucterhand was milking out his injuries and that

Lucterhand stayed in the hospital longer than he had to.  (Lucterhand Dep. 255.)

The defendants, however, deny that Armbrust told Lucterhand that he missed too

much work or that he was making too much of his injuries or milking them in some

way.  (Armbrust Dep. ¶ 150-51.)

Lucterhand's clearest direct evidence of retaliation is his statement that

Armbrust told him on November 11, 2004, that he was being terminated because

Armbrust did not believe that his injury was as extensive as Lucterhand represented,

Lucterhand spent too much time away from work, and Lucterhand should have found

a better way to and from work.  (Lucterhand Dep. 258.)  The defendants, however,

deny that Armbrust made these statements.  According to the defendants, at the

November 11, 2004 meeting where Lucterhand was terminated, Armbrust did not

talk about Lucterhand's injuries or tell Lucterhand that he had missed too much

work.  (Armbrust Dep. 143-44, 150.)

Because Lucterhand's direct evidence of retaliation is contradicted, the case

must be tried unless the defendants present unrebutted evidence that Granite

Microsystems would have terminated Lucterhand even if it had no retaliatory motive.

*See Stone*, 281 F.3d at 644.  In that event, the defendants would be entitled to

summary judgment because they have shown that Lucterhand was not harmed by retaliation. *See id.* The defendants contend that Lucterhand was not terminated in retaliation for exercising his FMLA rights; rather, he was terminated because of his poor performance. According to the defendants, Lucterhand was terminated because his department was not getting any better, Lucterhand was only in the position on an interim basis, and his performance was inadequate throughout his three years with Granite Microsystems. (Armbrust Dep. 143-44, 150.)

In support of their assertion that Lucterhand was terminated due to his performance, the defendants state that Lucterhand's annual performance reviews at Granite Microsystems were both "horrible" (Armbrust May 9, 2006 Aff. ¶ 4, Exs. 1 and 2), Lucterhand was given the position of Director of Global Operations on an "interim" basis for only "3 to 9 months," (Armbrust Dep. 57-61), and Lucterhand admitted in his deposition that while he held the position of interim director of global operations, he met at least weekly with Armbrust and at each of those meetings they "discussed needs for improvement in my area of responsibility," and "improvement wasn't occurring." (Lucterhand Dep. 310-11.) In addition, the defendants have named W. Steven Haas ("Haas"), a businessman with 30 years of related experience, as an expert witness in this case to support their claim that they were justified in terminating Lucterhand for his performance. (Laing Aff. ¶ 5 Ex. D.) After reviewing the facts in this case, Haas states:

There were clearly job performance issues with Mr. Lucterhand at

-25-

Granite Microsystems, which justified his termination in November 2004. . . . The Director of Operations position was given to Mr. Lucterhand with reservations and on an interim basis with reservations that would be addressed and observed. He simply was not doing the job at a level sufficient to warrant retaining him.

(*Id.*) Moreover, the defendants assert that Lucterhand's claim that he was terminated because Granite Microsystems did not want to accommodate his medical restrictions resulting from surgery lacks merit because Lucterhand was released by his doctor to return to work without any limitations or restrictions. (Armbrust August 9, 2006 Aff. ¶ 10, Ex. F.) As such, the defendants assert, the record demonstrates that Lucterhand was terminated for his poor performance, not in retaliation for exercising his FMLA rights.

Lucterhand contends that the defendants' reasons for terminating him are a pretext, and rebuts the defendants' evidence by presenting evidence that his performance at Granite Microsystems would not warrant his termination. A pretext, in employment law, is a "phony reason" that the employer offers for engaging in discriminatory conduct. *Mills v. First Fed. S & L Ass'n*, 83 F.3d 833, 845 (7th Cir. 1996). To show pretext in a reduction in force case, an employee must establish that an improper motive tipped the balance in favor of discharge. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003). In support of his claim that the defendants' proffered reasons for his termination are pretext, Lucterhand notes that he was promoted twice in three years and his 2003 performance review pointed out many of his accomplishments. This performance review states that, in his first year

-26-

with Granite Microsystems, Lucterhand reduced Granite Microsystems' costs, contributed significantly to an increase in overall gross profit, successfully negotiated freight discounts, successfully negotiated with suppliers, used his technical background to determine solutions to problems, made systems more efficient, reduced excess inventory, stood up for his department, put in extra time, drew well on experiences with prior buyers, and increased his responsibility. (Armbrust May 9, 2006 Aff. Ex. 1.) In addition, Lucterhand notes that he received a bonus of $40,000 for the year preceding his termination. (Lucterhand Dep. 258; Armbrust Dep. 141-43.) Lucterhand also points to a July 14, 2004 memo discussing the director of global operations position, stating that "[t]his is a critical time for Granite in its growth plans – we cannot afford to mess up." (Armbrust May 9, 2006 Aff. Ex. 2.) Thus, Lucterhand asserts, it is inherently contradictory for the defendants to claim Lucterhand was a poor performer when they promoted him to the director of global operations position at such a critical time.

Although it is undisputed that Armbrust and Lucterhand often discussed the continuing need for improvement in Lucterhand's area of responsibility, (Lucterhand Dep. 310-11), these discussions do not present conclusive evidence that Lucterhand was terminated for his performance, or even that Armbrust was critical of Lucterhand's performance. According to the parties, the discussions addressed the department's performance. And while one way to measure Lucterhand's performance would be to look at his department's performance, it is possible that the

global operations department was performing poorly because of factors unrelated to Lucterhand's performance. Thus, drawing all inferences in favor of the non-moving party, in this instance Lucterhand, the court cannot conclude that these discussions demonstrate that Lucterhand was terminated for his performance.

The court concludes that a question of fact exists as to whether Lucterhand's FMLA leave and need for continuing intermittent leave was taken into account in his termination. An employer "cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ." 29 C.F.R. § 825.220(c). Prior to his hospitalization and his termination, no one at Granite Microsystems warned Lucterhand that he was about to be terminated, or that he would be terminated unless his department's performance improved. Indeed, Lucterhand was arguably promoted twice in three years. Furthermore, suspicious timing is a type of circumstantial evidence under the direct method. *Buie*, 366 F.3d at 506. And temporal proximity could create an issue of material fact when the termination follows on the heels of the employee's protected activity. *See King*, 166 F.3d at 893 (reasoning that temporal proximity created an issue of fact where the plaintiff's termination occurred one day after she finished her FMLA leave). Here, Lucterhand was terminated one month after he returned from his hospitalization, and he was still required to attend physical therapy sessions twice a week when he was terminated. The record viewed in the light most favorable to Lucterhand could permit a reasonable juror to conclude that the defendants took

-28-

Lucterhand's leave and need for continuing intermittent leave into account when they terminated him.

In sum, disputes of material fact preclude the court from granting either parties' motion for summary judgment. *See* Fed. R. Civ. P. 56(c). Specifically, the record viewed in the light most favorable to the defendants, including Armbrust's testimony that he did not talk about Lucterhand's injuries or tell Lucterhand that he had missed too much work at the meeting where Lucterhand was terminated (Armbrust Dep. 150), in addition to Armbrust's calls for improvement in Lucterhand's department and the concerns expressed regarding Lucterhand's performance in his reviews, could permit a reasonable juror to conclude that Lucterhand was terminated because of his performance, not in retaliation for exercising his FMLA rights. As such, the court is obliged to deny Lucterhand's motion for partial summary judgment on his FMLA claim. Conversely, the record viewed in the light most favorable to Lucterhand, including Lucterhand's testimony that at the meeting where he was terminated, Armbrust explained that he was terminating Lucterhand because he did not believe that his injury was as extensive as Lucterhand represented and that Lucterhand spent too much time away from work (Lucterhand Dep. 258), in addition to Lucterhand's accomplishments as indicated in his performance review (Armbrust May 9, 2006 Aff. Ex. 1) and his arguable promotions within Granite Microsystems at what Armbrust described as "critical" times, could permit a reasonable juror to conclude that Lucterhand's hospitalization and continuing need for intermittent leave

-29-

was taken into account in his termination.  Because the court believes Lucterhand may be able to show that his leave "tipped the balance" in favor of his termination, the court is obliged to also deny the defendants' motion for summary judgment as to Lucterhand's FMLA claim.  *See Schuster*, 327 F.3d at 574.

## B.    False Imprisonment Claim

The court concludes that no issue of material facts exist in regards to Lucterhand's claim of false imprisonment.  Lucterhand asserts that Armbrust's refusal to permit Lucterhand to skip Choong's presentation constitutes false imprisonment.  Even though the parties dispute whether Lucterhand actually requested that he be permitted to skip the presentation, even assuming Lucterhand did make this request, his claim of false imprisonment is barred by Wisconsin's Worker's Compensation Act ("WCA") which provides the exclusive remedy for certain injuries sustained at the workplace.  *See* Wis. Stat. § 102.03.

It is undisputed that Lucterhand's injury arose out of his employment.  Under Wisconsin law, an employee's exclusive remedy for a work-related injury lies under the WCA.  *Hibben v. Nardone*, 137 F.3d 480, 481 (7th Cir. 1998); *West Bend Mut. Ins. Co. v. Berger*, 192 Wis. 2d 743, 750, 531 N.W.2d 636, 639 (Wis. Ct. App. 1995). "Although employee immunity is the rule, the legislature has carved out exceptions which are to be narrowly construed." *West Bend Mut. Ins. Co. v. Berger*, 192 Wis. 2d at 750, 531 N.W.2d at 639.  In order for Lucterhand to maintain a tort action against the defendants, he must show that Armbrust's actions constitute assault

-30-

intended to cause bodily harm. *See* Wis. Stat. § 102.03(2). Section 102.03(2) of the Wisconsin statutes provides, in part:

> Where such conditions exist [i.e., injury arising out of an employee's employment] the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm . . . .

Wis. Stat. § 102.03(2).

It is undisputed that Armbrust did not physically assault Lucterhand; however, Lucterhand asserts that his false imprisonment claim is not barred by the WCA because Armbrust's refusal to take him to the hospital was an intentional assault certain to cause injury. Lucterhand maintains that by forcing him to attend Choong's presentation rather than seek medical care, Armbrust took advantage of Lucterhand's incapacitated state, and in so doing, Armbrust increased the likelihood that Lucterhand would suffer additional bodily harm from injuries already sustained. Lucterhand notes that intent to injure can be inferred "if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law." *Loveridge v. Chartier*, 161 Wis. 2d 150, 169, 468 N.W.2d 146, 151 (Wis. 1991). The magnitude of potential injury is not dispositive, but a substantial certainty of any injury may warrant inferring intent as a matter of law. *Gouger v. Hardtke*, 167 Wis. 2d 504, 515, 482 N.W.2d 84, 89 (1992). Lucterhand asserts that Armbrust's refusal to permit Lucterhand to skip the presentation and refusal to take

-31-

Lucterhand immediately to the hospital demonstrates that Armbrust intended to cause Lucterhand bodily injury. Therefore, Lucterhand asserts, Armbrust's actions qualify as an assault intended to cause bodily harm and thus fall outside the WCA's exclusive remedy provision.

In support of his position that the court should infer intent to cause bodily injury, Lucterhand suggests that Armbrust's actions, like those of an individual who fires a gun into a crowd, were substantially certain to cause bodily injury. While courts may infer intent to injure as a matter of law, Wisconsin courts have only done so in cases involving criminal conduct on the part of the defendant. The facts distinguish this case from Lucterhand's hypothetical of a man firing a gun into a crowd and from *K.A.G. v. Stanford*, 148 Wis. 2d 158, 434 N.W.2d 790 (Wis. Ct. App. 1988), where the criminal nature of the conduct strengthened the inference of intent to cause bodily harm. See *id.* (holding that intent to injure could be inferred by the court when the defendant sexually assaulted a minor) *see also Schwersenska v. American Family Mut. Ins. Co.*, 206 Wis. 2d 549, 557 N.W.2d 469 (Wis. Ct. App. 1996) (holding that intent to injure could be inferred by the court when the defendant conspired with his friend who fired a gun at a following vehicle and injured its driver).

Here, Armbrust's alleged actions, stating that Lucterhand was free to leave once the presentation was over and then taking Lucterhand to the hospital after the presentation, do not warrant inferring as a matter of law that Armbrust intended to injure Lucterhand. Viewing the facts of this case as presented by Lucterhand,

-32-

Armbrust's alleged conduct was not so substantially certain to cause injury that a court may infer an intent to injure. *See, e.g., Gouger*, 167 Wis. 2d at 514-15, 482 N.W.2d at 89 (holding that throwing a piece of soapstone at another person, even with the intent of hitting that person, is not so substantially certain to cause injury that a court may infer an intent to injure); *see also Johnson v. Hondo, Inc.*, 125 F.3d 408, 418 (7th Cir. 1997) (noting that even injuries caused by intentional conduct may lie within the purview of "accident" under the WCA). Indeed, it is equally or perhaps more reasonable to infer that Armbrust did not intend to injure Lucterhand; rather, Armbrust wished for Lucterhand, as director of global operations, to attend the presentation about the supply chain in China and the Chinese market in general. (Armbrust Dep. 85.)

Viewing the facts in the light most favorable to Lucterhand, a reasonable juror could not conclude that Armbrust intended to cause Lucterhand bodily harm, or that physical injuries were substantially certain to follow from his actions. In *Jenson v. Employers Mut. Casualty Co.*, 161 Wis. 2d 253, 468 N.W.2d 1 (1991), the Wisconsin Supreme Court determined that, at the very least, an assault intended to cause bodily harm must be more than verbal; it must be physical. *Id.* at 276, 468 N.W.2d at 10. *See also Becker v. Automatic Garage Door Co.*, 156 Wis. 2d 409, 418-19, 456 N.W.2d 888, 891-92 (Wis. Ct. App. 1990) (to come within the assault exception, there must be a threat of physical violence). In the instant case, it is undisputed that Armbrust did not use physical force or violence or verbally or physically assault

Lucterhand. (Lucterhand Dep. 141, 286.) Although Armbrust arguably knew Lucterhand was in pain, Lucterhand did not give Armbrust any indication that he would sustain additional injuries unless he were permitted to seek immediate medical attention. Indeed, even though Lucterhand was in the best position to know the extent of his injury, it appears that he did not inform Armbrust about his prior injury to his knee or give Armbrust any reason to believe that he needed immediate medical attention. Lucterhand does not suggest that Armbrust physically prevented him from calling a taxi or an ambulance to have him taken to a hospital once he reached Bader's office. Furthermore, Armbrust took Lucterhand to the hospital when Lucterhand requested medical attention after the presentation. Why would Armbrust have brought Lucterhand to the hospital if he intended to make his injury worse? While Armbrust may have been aware that Lucterhand was in pain, the record does not support a conclusion that Armbrust intended for Lucterhand to sustain bodily injury, or that he was substantially certain that Lucterhand's injury would get worse. As such, Lucterhand's claim of false imprisonment is barred by the exclusivity provision of the WCA.

Furthermore, Lucterhand's claim fails to meet the elements of a false imprisonment cause of action under Wisconsin Law. In Wisconsin, the tort of false imprisonment is defined as "[t]he unlawful restraint by one person of the physical liberty of another." *Laska v. Steinpreis*, 69 Wis. 2d 307, 321, 231 N.W.2d 196 (1975) (citation omitted). For false imprisonment to be actionable, the actor must use "force

-34-

or violence," or "the circumstances attending the [restraint] must be such as to warrant a reasonable apprehension that force will be used if there is no submission to the restraint under it." *Gunderson v. Struebing*, 125 Wis. 173, 177-78, 104 N.W. 149 (1905) (citation omitted). False imprisonment, by its very nature, requires "confinement or restraint" of the victim, with no reasonable means of escape. *State v. C.V.C.*, 153 Wis. 2d 145, 154, 450 N.W.2d 463 (Wis. Ct. App. 1989). "[I]f there is some reasonable means of escape, there is no confinement or restraint" as a matter of law. *Id.*

In *Weiler v. Herzfeld-Phillipson Co.*, 189 Wis. 554, 208 N.W. 599 (1926), the plaintiff was told by her employer that she could not leave a meeting or telephone her husband, yet the Wisconsin Supreme Court held that the plaintiff's claim of false imprisonment lacked merit because the door to the office was unlocked. *Id.* Here, although Lucterhand asserts that his "freedom of locomotion" was compromised while he was in Armbrust's car, the record demonstrates that Lucterhand had a reasonable means of escape. It is undisputed that Armbrust did not use or threaten to use physical force or violence or verbally or physically assault Lucterhand. (Lucterhand Dep. 141, 286.) And Armbrust's alleged actions would not reasonably induce Lucterhand to think that Armbrust would use force against him. Indeed, it appears that nothing but Lucterhand's belief that Armbrust would be displeased if he missed Choong's presentation prevented Lucterhand from calling a taxi or an ambulance once he arrived at Bader's office. Moreover, in response to the

defendants' motion for summary judgment, Lucterhand does not explain why he did not exit Armbrust's car, why he walked into Bader's building, why he did not walk out of the meeting, and why he never used his cell phone to call a friend, ambulance, or taxi to pick him up. Viewing the facts in the light most favorable to Lucterhand, a reasonable juror could not conclude that Lucterhand had no reasonable means of escape. Accordingly, the court concludes that Lucterhand's false imprisonment claim fails to meet the elements of a false imprisonment cause of action under Wisconsin Law.

## C. Compensatory Damages

Finally, the defendants assert Lucterhand should be barred from seeking compensatory damages because he failed to provide the defendants with a computation of damages pursuant to Fed. R. Civ. P. 26(a)(1)(C). Fed. R. Civ. P. 26(a)(1)(C) provides that "a party must, without awaiting a discovery request, provide to other parties . . . a computation of any category of damages claimed by the disclosing party. . . . " *Id.* In his complaint, Lucterhand seeks, among other things, "appropriate back pay and benefits, reinstatement, liquidated damages, compensatory and punitive damages, and reimbursement for other benefits and expenses" from the defendants. (Compl. 5.)

In his Rule 26(a) preliminary disclosures to the defendants, Lucterhand provided the defendants with the following "computation of any category of damages claimed" by him: "The Plaintiff anticipates recovery of damages in the form of wage

-36-

loss, attorney's fees, compensatory and punitive damages, which have not yet been computed." (Laing Aff. Ex. F.) On March 9, 2006, the defendants served Lucterhand with a written discovery request. Interrogatory No. 6 asked Lucterhand to identify the categories and amounts of all damages he was seeking in this case. (*Id.* ¶ 8. Ex. G.) On April 11, 2006, Lucterhand answered that interrogatory as follows: "The Plaintiff has suffered damages in the form of lost wages since his termination, attorney fees yet to be calculated and anticipates pursing compensatory and punitive damages to be determined by a jury of his peers." (*Id.*) On July 14, 2006, the last day of discovery in this case, the defendants once again requested that Lucterhand provide a computation of the damages he is seeking; however, Lucterhand refused to provide a specific computation of damages. (Lucterhand Dep. 286-92.)

In light of Lucterhand's refusal to provide a specific computation of his damages during discovery, the defendants assert that he should be barred from seeking any compensatory damages in this case. The defendants state that because of Lucterhand's refusal to provide such information, the defendants have been unable to prepare a defense to Lucterhand's claimed damages.

Lucterhand contends that he has repeatedly articulated his damage categories, and that his back pay and attorney's fees damaged could not be computed because they continued to build. Lucterhand asserts that identification of damage categories is sufficient to avoid causing any harm or "handcuffing" to the

-37-

defendants.

Federal Rule of Civil Procedure 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." *Id.* The defendants assert that Lucterhand has not provided justification for his failure to disclose a specific computation of his compensatory damages, and this failure would harm the defendants because it would be inherently unfair for the defendants to first learn of the amount and computation of his damages at trial. These circumstances, the defendants assert, would give the defendants no time to adequately respond, prepare a defense, conduct further discovery, or retain an expert witness on the subject.

Although Lucterhand provided his categories of damages, he failed to provide a computation of any category of damages claimed by him, even though the defendants requested this information on three separate occasions. Lucterhand was asked to provide the computation in his preliminary disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C), in response to the defendants' interrogatories, and in response to the defendants' deposition. However, because the defendants have not demonstrated that Lucterhand's failure to disclose a specific computation is actually harmful to them, the court will deny their request.

The defendants knew that after he was terminated by Granite Microsystems Lucterhand was unemployed from November 11, 2004, to February 14, 2005, and

that during that three-month period, Lucterhand received four weeks of unused vacation pay and two weeks of severance pay from Granite Microsystems, followed by unemployment compensation from the State of Wisconsin. (Lucterhand Dep. 57, 64; Armbrust August 9, 2006 Aff. ¶ 18.) In addition, the defendants knew that Lucterhand became employed on February 14, 2005 by a company located in Pittsburgh, Pennsylvania, with a salary of $94,000 per year, and in March 2006 he received a $2,000 increase in pay. (Lucterhand Dep. 57, 60.) With this information, the defendants could make reasonable calculations regarding the amount of compensatory damages. As such, the defendants do not demonstrate that they were actually harmed by Lucterhand's failure to provide specific computations. In addition, the court finds Lucterhand provided substantial justification for not providing specific back pay and attorney's fees computations because his back pay and attorney's fees damages continued to build. Finally, punitive damages are not readily susceptible to precise calculation, so a failure to provide a computation in discovery may be harmless. *See, e.g., Davis v. Harris*, 2006 U.S. Dist. LEXIS 88000, 2006 WL 3513918 (C.D. Ill. 2006).

Lucterhand disclosed the categories of damages he is seeking, indicated at his deposition that he lost "out of pocket" approximately $25,000 due to his termination (Lucterhand Dep. 289), provided the defendants with details regarding his compensation at his new job, and has not attempted to seek a new category of damages after the close of discovery. The defendants have not demonstrated that

-39-

Lucterhand's actions have harmed them. *Cf. John Deere & Co v. Ohio Gear*,
2007 U.S. Dist. LEXIS 3960 (N.D. Ill. 2007) (plaintiff was barred from proceeding on
the issue of lost profits as a sanction under Rule 37(c) because plaintiff failed to
disclose lost profits as a category of damages and adding the issue of lost profits to
the case after the close of discovery would change the case from one involving
$3.2 million in damages to one involving $18 million in damages, and would require
reopening of discovery). Although Lucterhand perhaps could have been more
helpful and informative in his discovery responses regarding the amount of damages
he seeks, the circumstances of this case do not warrant Rule 37(c) sanctions. As
such, the court will deny the defendants' request to bar Lucterhand from offering any
evidence at trial as to compensatory damages.

**D.      Intervening Defendants' Duty to Defend**

On July 11, 2006, the intervening defendants, Federal and Vigilant, filed a
motion for a declaratory judgment pursuant to Fed. R. Civ. P. 57, requesting that the
court issue an order declaring that they have no duty to defend or indemnify the
defendants for the allegations contained in Lucterhand's complaint. On August 17,
2006, the defendants filed a cross-motion for a declaratory judgment pursuant to
Fed. R. Civ. P. 57, requesting that the court issue an order declaring that Federal
and Vigilant are barred from challenging coverage, have a duty to defend the
defendants in this case, and have a duty to reimburse the defendants for all defense
costs incurred by them to date. For the reasons stated below, the court will grant

Federal and Vigilant's motion for a declaratory judgment and deny the defendants' motion for a declaratory judgment.

Between March 1, 2004, and March 1, 2005, contracts of insurance were in effect between Granite Microsystems and both Federal and Vigilant. (Meadows Aff. Exs. A and B; Armbrust Aug. 17, 2006 Aff. Ex. A.) The defendants are insured under three separate insurance policies issued by the intervening defendants, a general liability policy, an umbrella policy, and a workers compensation/employers liability policy. (*Id.*) The defendants tendered the defense of this case to Federal and Vigilant, claiming that these insurance contracts obligate Federal and Vigilant to defend and indemnify the defendants in Lucterhand's case against them. However, after the defendants tendered the defense of this case, Federal and Vigilant indicated that no coverage existed under any of Granite Microsystem's insurance policies. (Armbrust Aug. 17, 2006 Aff. Ex. C.)

The general liability policy, and umbrella policies provide coverage for "bodily injury or property damage caused by an occurrence to which this coverage applies." (Meadows Aff. Exs. A, 3-4 and B, 3.) The employers liability policy states that it "applies to bodily injury by accident or bodily injury by disease." (Armbrust Aug. 17, 2006 Aff. Ex. A, 7.) Federal and Vigilant assert that none of the insurance policies grant coverage because the injuries alleged in Lucterhand's complaint are bodily injuries sustained without an "occurrence" and were not caused by an accident.

A federal court's determination of whether an insurer has a duty to defend is

-41-

a matter of state substantive law.  *See, e.g., Colton v. Swain*, 527 F.2d 296, 300 (7th Cir. 1975).  Because the insurance policies in question were executed in Wisconsin and the incidents forming the basis of this suit took place in Wisconsin, Wisconsin law controls.  *See. id.*  Under Wisconsin law, whether an insurer has a duty to defend is determined according to the allegations in the complaint.  *Delta Group, Inc. v. DBI, Inc.*, 204 Wis. 2d 515, 522, 555 N.W.2d 162, 165 (Wis. Ct. App. 1996); *see also Employers Mut. Cas. Co. v. Horace Mann Ins. Co.*, 2005 WI App 237, ¶ 6, 287 Wis. 2d 418, ¶ 6, 707 N.W.2d 280, ¶ 6 (Wis. Ct. App. 2005) ("To determine whether there was a duty to defend, we compare the allegations in the complaint to the relevant portions of the insurance policy.").  "The insurer has a duty to defend whenever the allegations in the complaint, if proven, create a possibility of recovery that falls under the terms and conditions of the insurance policy." *Employers Mut. Cas. Co.*, 2005 WI App 237, ¶ 6, 287 Wis. 2d at ¶ 6, 707 N.W.2d at ¶ 6.  "The duty of defense depends on the nature of the claim, not the merits, and any doubts must be resolved in favor of the insured."  *Delta Group, Inc.*, 204 Wis. 2d at 522, 555 N.W.2d at 165.  Accordingly, the court will examine the allegations in Lucterhand's underlying complaint to determine whether they create a possibility of recovery under the terms and conditions of any of the three insurance policies.

The parties agree that the injuries alleged in Lucterhand's complaint occurred during the policy period and that they constitute "bodily injuries" as defined by the insurance policies.  (Intervening Defs.' Br. in Supp. of Mot. for Declaratory J. 5;

Defs.' Br. in Supp. of Mot. for Declaratory J. 15-16.) However, the defendants, assert that Lucterhand's complaint alleges a personal injury in the form of lost wages and benefits, as well as bodily injuries. The general liability and umbrella policies define bodily injury as "physical: injury; sickness; or disease; sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time." (Meadows Aff. Exs. A, 27 and B, 25.) The general liability and umbrella policies define personal injury as "injury, other than bodily injury, property damage or advertising injury caused by an offense of . . . false arrest, false detention, or other false imprisonment." (Meadows Aff. Exs. A, 29 and B, 30.) The employers liability policy does not define bodily or personal injury. Lucterhand's complaint alleges he suffered the following injuries: lost wages and other employment benefits, pain and suffering, emotional distress, humiliation, embarrassment, and degradation. (Compl. ¶ 20, 23, 26.) The defendants assert Lucterhand's alleged lost wages and benefits constitute a personal injury caused by his alleged false imprisonment. However, the injuries Lucterhand alleges in his complaint, including the lost wages and other benefits that were caused by his other alleged injuries, fall within the definition of bodily injury. Lucterhand's alleged pain and suffering stems from his physical injury, and his alleged injuries of emotional distress, humiliation, embarrassment, and degradation are various forms of mental anguish which is specifically identified in the policies' definition as a bodily injury. (Meadows Aff. Exs. A, 27 and B, 25.) Lucterhand's alleged injury of lost wages and benefits are

-43-

simply the end result of the alleged bodily injuries; they are not separate and distinct injuries. As such, the injuries alleged in the complaint fall within the policies' definition of bodily injuries.

The grant of coverage in the general liability policy, and umbrella policy dictates that the alleged bodily injuries must have been caused by an "occurrence." (Meadows Aff. Exs. A, 6 and B, 3.) Both policies define "occurrence" as follows: "Occurrence means an accident, including continuous repeated exposure to substantially the same harmful conditions." (Meadows Aff. Exs. A, 28 and B, 29.) And the grant of coverage in the employers liability policy also dictates that the alleged bodily injuries must have been caused by an accident. (Armbrust Aug. 17, 2006 Aff. Ex. A, 7.) The term "accident" is not defined in any of the policies.

Vigilant and Federal assert that because Lucterhand's claims are based on intentional acts of the defendants, not accidental acts, the complaint does not allege an occurrence or an accident under the terms of the general liability, umbrella, or employers liability policies. In other words, Federal and Vigilant claim that the intentional termination in violation of the FMLA, intentional infliction of emotional distress, and intentional withholding of medical treatment and false imprisonment, as alleged in Lucterhand's complaint, cannot arguably qualify as occurrences or accidents. (Compl. ¶¶ 19, 22, 25.) As such, Federal and Vigilant assert that the policies do not create a possibility of recovery under the terms and conditions of any of the policies, and as a result, they have no duty to defend.

-44-

The defendants contend that Federal and Vigilant have a duty to defend and indemnify them under all the policies because Lucterhand's complaint arguably alleges bodily injuries that resulted from an occurrence or an accident. The defendants assert that Armbrust's actions as alleged in the complaint, which led to Lucterhand's alleged injuries, could arguably qualify as occurrences or accidents because Armbrust arguably did not expect and intend that Lucterhand would suffer the injuries he alleges resulted from Armbrust's actions. In support of this position, the defendants cite the following definition of an "accident" provided by the Wisconsin Supreme Court.

> The dictionary definition of 'accident' is: 'an event or condition occurring by chance or arising from unknown or remote causes.' *Webster's Third New International Dictionary of the English Language* 11 (2002). Black's Law Dictionary defines 'accident' as follows: 'The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation. A result, though unexpected, is not an accident; the means or cause must be accidental.' *Black's Law Dictionary* 15 (7th ed. 1999).

*American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 37, 268 Wis. 2d 16, ¶ 37, 673 N.W.2d 65, ¶ 37.

Under this definition of accident, the defendants assert that it is arguable that Lucterhand's injuries resulted from an occurrence or an accident because, "[w]hether the events which caused Lucterhand's alleged damages were with or without Armbrust's 'foresight or expectation,' *American Girl*, 268 Wis. 2d at 38, is a question of fact for the jury." (Defs.' Br. in Supp. of Mot. for Declaratory J. 17.) And as a

-45-

result, the defendants assert, Federal and Vigilant have a duty to defend and indemnify the defendants in this case.

The court begins its analysis by looking to the policies' operative terms to determine whether they are ambiguous. *See Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, ¶ 13, 665 N.W.2d 857, ¶ 13. An insurance policy is ambiguous if its language is susceptible to more than one reasonable interpretation. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 15, 275 Wis. 2d 35, ¶ 15, 683 N.W.2d 75, ¶ 15. The same rules of construction that govern general contracts apply to the interpretation of the terms of insurance polices, thus the court must construe the terms in the policies as they would be understood by a reasonable person in the position of the insured and to give its terms their common and ordinary meaning. *Midway Motor Lodge of Brookfield v. Hartford Ins. Group*, 226 Wis. 2d 23, 30, 593 N.W.2d 852, 855 (Wis. Ct. App. 1999).

The court concludes that the policies' operative terms are not ambiguous. The term "occurrence" is defined within the general liability and umbrella policies, and the definitions state that an "Occurrence means an accident." (Meadows Aff. Exs. A, 28 and B, 29.) All three policies make it clear that they grant coverage for bodily injuries caused by accidents, and their language is not susceptible to more than one reasonable interpretation. (Meadows Aff. Exs. A, 6, 28 and B, 3, 29; Armbrust Aug. 17, 2006 Aff. Ex. A, 7.) Giving the term "accident" its common and ordinary meaning, the court concludes that Armbrust's actions alleged in the complaint

-46-

cannot be construed as accidents.

In asserting that Armbrust's actions alleged in the complaint could arguably qualify as accidents, the defendants focus on the results of Armbrust's actions rather than Armbrust's actions themselves. The question before the court is whether Armbrust's actions, the events, means, or causes which created the results, can arguably qualify as accidents. Although the results of an action may not be foreseen or expected, in determining whether an action qualifies as an accident, the court does look not at the results, but at the event that led them. Indeed, the definition provided by the defendants indicates that the"means or cause" is the focus of the inquiry, not the results: "[a] result, though unexpected, is not an accident; the means or cause must be accidental." *See American Girl*, 2004 WI 2, ¶ 37, 268 Wis. 2d at ¶ 37, 673 N.W.2d at ¶ 37 (citing *Black's Law Dictionary* 15 (7th ed. 1999)). Armbrust's alleged actions, the events in Lucterhand's complaint, were not "without one's foresight or expectation" or "occurring by chance or arising from unknown or remote causes." *See id.* Nor could any of Armbrust's alleged actions be considered "an unexpected, undesirable event or an unforseen incident, which is characterized by lack of intention." *Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245, 250 (Wis. 1998) (citing *The American Heritage Dictionary of the English Language* 11 (3rd ed. 1992)). Rather, Armbrust's alleged acts in Lucterhand's complaint are intentional acts: intentional termination in violation of the FMLA, intentional infliction of emotional distress, and intentional withholding of medical treatment and false

-47-

imprisonment. (Compl. ¶¶ 19, 22, 25.) Armbrust did not accidentally or by chance terminate Lucterhand, nor did he accidentally or by chance tell Lucterhand that he could not skip Choong's presentation. Those acts, as alleged in the complaint, were consciously done by Armbrust. Thus, Armbrust's actions, as alleged in the complaint, cannot arguably qualify as occurrences or accidents. Given that Armbrust's alleged actions cannot arguably qualify as accidents, there was no initial grant of coverage under any of the policies.

To be clear, as noted above, Lucterhand's claim of false imprisonment is barred by the WCA because the record does not support a conclusion that Armbrust intended for Lucterhand to sustain bodily injuries or that Armbrust was substantially certain that Lucterhand's injury would get worse when Armbrust allegedly told Lucterhand that he could not skip Choong's presentation. It does not follow from this conclusion, however, that Armbrust's alleged actions were necessarily accidental. A cause or event can be intentional but have unintended results. *American Girl, Inc.*, 2004 WI 2, ¶ 37, 268 Wis. 2d at 38, 673 N.W.2d at 76 ("A result, though unexpected, is not an accident; the means or cause must be accidental.") (citing *Black's Law Dictionary* 15 (7th ed. 1999)). Here, although the results of Armbrust's alleged actions may have been unintended, nothing in the record suggests that Armbrust's alleged actions were accidental.

Vigilant and Federal also assert that even if Lucterhand's complaint alleged injuries caused by an occurrence or an accident, and thus, there was an initial grant

of coverage under the policies, the allegations fall within exclusionary language of the policies. Vigilant and Federal assert that there are two applicable exclusions: employment-related practices and intentional acts. Under the employment-related practices exclusion, the "insurance does not apply to any damages sustained at any time by any person, whether or not sustained in the course of employment by any insured, arising out of any employment-related act, omission, policy, practice or representation directed at such person . . . . " (Meadows Aff. Exs. A, 19-20 and B, 16-17; *see also* Armbrust Aug. 17, 2006 Aff. Ex. A, 8.) Under this language, Vigilant and Federal assert, the policies exclude coverage for defending Lucterhand's claims which arose out of his employment relationship with the defendants. Under the intentional acts exclusion, the "insurance does not apply to bodily injury or property damage arising out of an act that: is intended by the insured; or would be expected from the standpoint of a reasonable person in the circumstances of the insured; to cause bodily injury or property damage, even if the actual bodily injury or property damage is of a different degree or type than intended or expected." (Meadows Aff. Exs. A, 15 and B, 13; *see also* Armbrust Aug. 17, 2006 Aff. Ex. A, 8.) Under this language, Vigilant and Federal assert, the policies exclude coverage for defending Lucterhand's claims which arose out of Armbrust's intentional acts, including his alleged refusal to permit Lucterhand to skip Choong's presentation and his alleged insistence that Lucterhand hasten his departure from the hospital.

The defendants assert that the intentional acts exclusion does not apply

-49-

because the facts of this case do not warrant a finding that Armbrust intended to injure Lucterhand as a matter of law. *See Raby v. Moe*, 153 Wis. 2d 101, 110, 450 N.W.2d 452, 455 (1990) (holding that a bodily injury can be excluded from insurance coverage as an intentional act by the insured if the insured intentionally acted and intended some bodily injury to follow from that act); *see also Loveridge*, 161 Wis. 2d at 169, 468 N.W.2d at 151 (holding that intent to injure can be inferred if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law). Here, the defendants assert, the minimal degree of certainty that Armbrust's alleged conduct would cause injury would not justify inferring intent to injure as a matter of law.

The defendants also assert that the employment related practices exclusion does not apply because the exclusion makes the grant of coverage illusory, and thus, the exclusion is invalid as a matter of law. The defendants assert that the definitions of "personal injury" and "occurrence," and the policy exclusion for "employment related practices" in Federal's general liability policy, when read together, make the policy internally inconsistent and ambiguous. Therefore, the defendants assert, the employment related practices exclusion is illusory and should be deemed invalid. However, the grant of coverage for personal injuries is not subject to the requirement of an occurrence. And, as noted above, the injuries alleged in the complaint fall within the definition of bodily injuries, not personal injuries. Moreover, there is no initial grant of coverage under any of the policies

-50-

because none of the events alleged in the complaint could arguably qualify as occurrences or accidents. Therefore, the employment related practices exclusion and the intentional acts exclusion do not apply, and the court need not address whether either of the exclusions would also exclude coverage under the policies.

Finally, the defendants also assert that Federal and Vigilant should be barred from challenging coverage because they breached their duty to defend the defendants in this case. As noted above, whether an insurer has a duty to defend is determined according to the allegations in the complaint. *Delta Group, Inc.*, 204 Wis. 2d at 522, 555 N.W.2d at 165. "The insurer has a duty to defend whenever the allegations in the complaint, if proven, create a possibility of recovery that falls under the terms and conditions of the insurance policy." *Employers Mut. Cas. Co.*, 2005 WI App 237, ¶ 6, 287 Wis. 2d at ¶ 6, 707 N.W.2d at ¶ 6; *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82, 87 (Wis. 1992); *see also Red Arrow Prods. Co. v. Employers Ins.*, 2000 WI App 36, ¶ 17, 233 Wis. 2d 114, ¶ 17, 607 N.W.2d 294, ¶ 17. (Wis. Ct. App. 2000) (holding that an insurer's duty to defend is broader than its duty to indemnify because the duty to defend exists when it is "merely arguable" that the policy in question provides coverage). "The duty of defense depends on the nature of the claim, not the merits, and any doubts must be resolved in favor of the insured." *Delta Group, Inc.*, 204 Wis. 2d at 522, 555 N.W.2d at 165. An insurer has a duty to defend if the existence of coverage is fairly debatable, and a claim is fairly debatable where a

-51-

genuine dispute over the status of the law or the facts exists at the time of tender of defense. *Red Arrow Prods. Co.,* 2000 WI App 36, ¶ 17, 233 Wis. 2d at ¶ 17, 607 N.W.2d at ¶ 17.

In support of their claim that Federal and Vigilant breached their duty to defend, the defendants cite to several cases where the court determined that the insurer breached its duty to defend by refusing to provide coverage before the court decided the issue of coverage. The circumstances in those cases, however, substantially differ from the circumstances in the instant case because in the cases cited it was arguable or "fairly debatable" that the policy in question provided coverage. *See Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 835, 501 N.W.2d 1, 12 (Wis. 1993) (holding that there was no doubt that the allegations in the complaint, if proved, would give rise to liability under the insurance policy); *Baumann v. Elliott,* 2005 WI App 186, ¶ 10, 286 Wis. 2d 667, ¶ 10, 704 N.W.2d 361, ¶ 10 (Wis. Ct. App. 2005) (noting that the duty to defend is triggered while coverage remains fairly debatable); *Kenefick v. Hitchcock,* 187 Wis. 2d 218, 232, 522 N.W.2d 261, 266 (Wis. Ct. App. 1994) (holding that the nature of that claim in the complaint was such that the court could not conclude that there was no duty on the insurer's part to defend the action); *Elliott v. Donahue,* 169 Wis. 2d 310, 317, 485 N.W.2d 403, 406 (Wis. 1992) ("In the present case, the issue of coverage was fairly debatable."). Unlike the circumstances in the cases cited by the defendant, in the instant case it is not arguable or "fairly debatable" that Federal and Vigilant's policies

-52-

provided coverage for Lucterhand's claims.

Coverage is the necessary precondition for both the duty to defend and the duty to indemnify. *See Employers Mut. Cas. Co.*, 2005 WI App 237, ¶ 13, 287 Wis. 2d at ¶ 13, 707 N.W.2d at ¶ 13 (citing *Smith v. Katz*, 226 Wis. 2d 798, 806-07, 595 N.W.2d 345, 350 (1999)). The duty to defend ultimately requires a finding of actual coverage, and that point is not reached unless the court finds at least arguable coverage. *Id.* The court concludes that these requirements were not met here. In the instant case, there is no genuine dispute over Armbrust's alleged actions or the status of the law at the time the defendants tendered the defense of this case to Federal and Vigilant. As noted above, Armbrust's actions, as alleged in Lucterhand's complaint, cannot arguably qualify as occurrences or accidents. Accordingly, there was no arguable coverage under any of the policies. Because the court concludes that Armbrust's alleged actions were not arguably covered by any of the policies, Federal and Vigilant did not have a duty to defend, and as a result, Federal and Vigilant have not breached their duty to defend by refusing to provide coverage. *See. e.g., Menasha Corp. v. Lumbermens Mut. Cas. Co.*, 361 F. Supp. 2d 887, 891 (E.D. Wis. 2005) ("Under Wisconsin law, . . . a duty to defend is only triggered by a complaint that plausibly alleges covered liability.").

In conclusion, because Armbrust's actions, as alleged in Lucterhand's complaint, cannot arguably qualify as occurrences or accidents, there was no initial grant of coverage under any of the policies. In addition, because the court

-53-

concludes that Armbrust's alleged actions were not arguably covered by any of the policies, Federal and Vigilant have not breached their duty to defend by refusing to provide coverage to the defendants. In light of the foregoing, the court is obliged to deny the defendants' motion for a declaratory judgment and grant Federal and Vigilant's motion for a declaratory judgment.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment on his FMLA claim (first cause of action) (Docket # 37) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 45) be and the same is hereby **GRANTED**, **in part**;

**IT IS FURTHER ORDERED** that the plaintiff's claim of intentional infliction of emotional distress, (second cause of action) be and the same is hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that the plaintiff's claim of intentional withholding of medical treatment and false imprisonment (third cause of action) be and the same is hereby **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that the defendants' motion for a declaratory judgment (Docket # 54) be and the same is hereby **DENIED**;

-54-

**IT IS FURTHER ORDERED** that the intervening defendants' motion for a declaratory judgment (Docket # 31) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin this __2nd__ day of March, 2007.

BY THE COURT:

_s/ J. P. Stadtmueller_____
J. P. Stadtmueller
U.S. District Judge